# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **THOMAS TREMARI &** | § | **CIVIL ACTION NO.:** |
| **TOMAS VELASQUEZ-ESTRADA,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| | § | |
| **LIBERTY OILFIED SERVICES, LLC** | § | **JURY DEMANDED** |
| **LIBERTY OILFIELD SERVICES, INC.** | § | |
| **Defendant.** | § | |

_____

## PLAINTIFFS' ORIGINAL COMPLAINT
_____

**TO THE HONORABLE U.S. DISTRICT COURT JUDGE**:

NOW COMES Plaintiffs THOMAS TREMARI AND TOMAS VELASQUEZ-ESTRADA (hereinafter referred to as "Plaintiffs") in the above-referenced matter, complaining of and about Defendant LIBERTY OILFIELD SERVICES, LLC. and LIBERTY OILFIELD SERVICES, INC. (hereinafter referred to as "Liberty" or "Defendant"), and for cause of action file this Original Complaint, showing to the Court the following:

### I.     PARTIES

1.     Plaintiffs Thomas Tremari and Tomas Velasquez-Estrada are individuals residing in Bexar County, Texas.

2.     Defendant Liberty Oilfield Services, LLC, is a Limited Liability Company formed in the state of Delaware and authorized to conduct business in the State of Texas. Defendant may be served with process by serving its registered agent, CT Corporation System, 1999 Bryan St. Suite 900, Dallas, Texas, 75201-3136.

3.      Defendant Liberty Oilfield Services, Inc., is a for-profit corporation formed in the state of Delaware and authorized to conduct business in the State of Texas. Defendant may be served with process by serving its registered agent, CT Corporation System, 1999 Bryan St. Suite 900, Dallas, Texas, 75201-3136.

## II.      JURISDICTION

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff's causes of action arise under federal statutes, namely Title VII of the Civil Rights act of 1964, 42 U.S.C. § 2000e-2(a)(1), and the Age Discrimination in Employment Act of 1967, 29 USC §6101.

5.      This suit arises under Section 1981 of the Civil Rights Act of 1866, as amended. Therefore, this Court has subject matter jurisdiction pursuant to Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

6.      Additionally, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's similar state claims that arise under the Texas Commission on Human Rights Act, which is codified in Chapter 21 of the Texas Labor Code, Texas Labor Code § 21.001 et seq. (hereinafter referred to as the "TCHRA"), because such claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

7.      Venue is proper in the Southern District of Texas - Houston Division pursuant to 28 U.S.C. § 1391(a) because this is the judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

## III.      NATURE OF THE ACTION

8.      This is an action brought pursuant to Title VII, ADEA, and TCHRA on the

2

*Plaintiffs' Original Complaint*

grounds that Plaintiff, Thomas Tremari was retaliated against after participating in protected activity under Title VII and the ADEA, namely opposing discrimination and harassment in the workplace.  Plaintiff Tomas Velasquez-Estrada was discriminated against, harassed, and subjected to a hostile work environment in violation of Title VII for race and national origin discrimination and the ADEA. The action is to correct and recover for Defendant's unlawful employment practices including the retaliation Plaintiffs' protected activities involving their complaints of discrimination and retaliation.

9.    This is also an action to correct and recover for Defendant's TCHRA. Specifically, Plaintiffs complain that Defendant discriminated and retaliated against them on the basis of the perception of age, race, national origin and for engaging in protected activities. See Texas Labor Code § 21.001 et seq.

10.    This is an action brought pursuant to Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 to correct and recover for Defendant Liberty Oilfield Service's unlawful employment practices on the basis of Plaintiff's race (Hispanic).

## IV.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

11.    On July 10, 2018, Plaintiffs filed a charge with the U.S. Equal Employment Opportunity Commission (hereinafter referred to as the "EEOC") against Defendant for discrimination based on disability and retaliation (Charge Nos. 451-2018-03159 and 451-2018-03175).  This charge was filed for discrimination and retaliation.  (See Exhibit 1, which is attached hereto and incorporated by reference).

12.    Subsequently, the EEOC issued Plaintiff a Notice of Right to Sue, dated April 29, 2019. (See Exhibit 2, which is attached hereto and incorporated by reference).  Plaintiffs file

3

this lawsuit within ninety (90) days of receiving the Right to Sue notice.  Therefore, this lawsuit is timely filed.

13.     No administrative exhaustion or other conditions precedent are required prior to the filing of claims under 42 U.S.C. §1983 (or 42 U.S.C. §1981).

## V.     FACTS

*TOMAS VELASQUEZ-ESTRADA*

14.     Plaintiff Tomas Velasquez- Estrada began working for Liberty on July 25, 2017. Plaintiff-Estrada was an extremely hard worker who is very skilled and qualified in his field. Plaintiff-Estrada is sixty-three (63) years old and is Hispanic from Mexico.   Plaintiff-Estrada speaks and understands English well, but he does have an accent.  From the very beginning of his time with Liberty, Plaintiff-Estrada was harassed, humiliated, abused and in all manners discriminated against based on his race, age, and national origin.

15.     Plaintiff-Estrada's supervisor Bobby Woodall often belittled him and asked him to do inappropriate things, humiliating Plaintiff-Estrada in front of his coworkers.  For instance, in September 2017, Mr. Woodall told Plaintiff-Estrada to make the supervisor's coffee. This was not Plaintiff-Estrada's job, and Mr. Woodall did not ask any of his other crew members to do the same thing.

16.     Mr. Woodall singled Plaintiff-Estrada out for poor treatment, and would constantly yell at Plaintiff-Estrada, calling him an "old man," and would say derogatory and offensive things to him such as to "stop speaking until you learn how to speak fucking English!"

17.      Sometime in November 2017, Mr. Woodall was having issues with a pump. Plaintiff-Estrada climbed up on the pump to help Mr. Woodall. Plaintiff-Estrada had many years

4

*Plaintiffs' Original Complaint*

of experience working in oil fields, so Plaintiff-Estrada offered to fix the pump at issue. Instead of being grateful for the assistance, Mr. Woodall instead screamed at Plaintiff-Estrada, telling Plaintiff-Estrada, "the day you learn how to speak fucking English is the day you can tell me how to do my fucking job!"

18.    Bobby Woodall however, was not the only person who took an immediate dislike to Plaintiff-Estrada based on Plaintiff-Estrada's age, race, and national origin.  Supervisor Drake Jackson also horribly abused Plaintiff-Estrada daily.  Mr. Jackson would constantly yell and get into Plaintiff-Estrada's face. Mr. Jackson would persistently call Plaintiff-Estrada "cry baby," and "old man."

19.    Plaintiff-Estrada was harassed for every little thing and singled out for negative treatment. For instance, if any other employee forgot to fix a pump or clean something, Mr. Jackson or Mr. Woodall would not say a word.  However, if Plaintiff-Estrada did not clean something or went to work on a different piece of equipment, Plaintiff-Estrada would get yelled at, or one of them would get into his face.

20.    Sometime in November 2017, Plaintiff-Tremari, who also worked for Liberty at the time as a Service Leader, spoke with Plaintiff-Estrada's co-workers - Enrique Avila. Mr. Avila told him that Plaintiff-Estrada was badly abused on the job site.  Mr. Avila told Plaintiff-Tremari that Mr. Woodall called Plaintiff-Estrada "old man," and "cry baby" all the time. Mr. Avila also told Plaintiff-Tremari that Mr. Jackson and Mr. Woodall would constantly tell Plaintiff-Estrada to "stop talking until you learn how to speak English!" Plaintiff-Tremari became very upset about this - especially after he confirmed these unlawful activities with Plaintiff-Estrada, his father.

5

*Plaintiffs' Original Complaint*

21.     Based on the unlawful actions being committed against Plaintiff-Estrada, on November 21, 2017, Plaintiff-Tremari called James Mitchell, Service Leader of his crew. He told Mr. Mitchell that Mr. Jackson and Mr. Woodall were harassing Plaintiff-Estrada, often telling him to "stop talking until you learn how to speak English!"  He also told Mr. Mitchell that both supervisors had been yelling and belittling Plaintiff-Estrada every day and that this occurred in front of the crew.  Mr. Mitchell told Plaintiff-Tremari he would speak with Mr. Jackson and Mr. Woodall and that he would handle the situation.  However, Mr. Mitchell did absolutely nothing to stop the abuse. Instead, Mr. Mitchell covered the situation up and failed to report it to anyone else until Plaintiff-Tremari escalated his complaints.

22.     Throughout December 2017, Mr. Jackson and Mr. Woodall continued to harass Plaintiff-Estrada. They told Plaintiff-Estrada daily to "stop speaking Spanish!" and called him an "old man cry baby!" when Plaintiff protested their disgusting treatment. They also refused to help Plaintiff-Estrada on the job, telling him instead, "if you need any help with anything, you have to learn to speak English first!"

23.     Because Mr. Mitchell had done absolutely nothing to help Plaintiff-Estrada, on January 10, 2018, Plaintiff-Tremari tried another route to get Plaintiff-Estrada some help. Plaintiff-Tremari was in Colorado for a Liberty Service Leaders Meeting.  The Company's Human Resource Director, Trace Quinnell, and a Company attorney were at the meeting discussing company policies. Plaintiff-Tremari raised his hand and asked the attorney, "what would happen if someone was to be harassed and made fun of them for the way they speak?" The attorney made it clear that this sort of action "falls under our company policy of ethnicity," and that it was "illegal."  Plaintiff-Tremari turned to Mr. Mitchell, who was seated at the same

6

table, and told him that he hoped that Mr. Mitchell handled his father's situation based on this clear Company policy. Mr. Mitchell acted very nonchalant and told Plaintiff-Tremari, "don't worry, it has been dealt with." It was abundantly clear; however, at that time, that Mr. Mitchell had done nothing to remedy the situation.

24.     Later, that same night, Plaintiff-Tremari spoke to Service Manager Clayton Camenisch about how the supervisors had belittled and humiliated Plaintiff-Estrada and the way he speaks. Mr. Camenisch told Plaintiff-Tremari that he would look into the situation. Despite the assurances of both Mr. Camenisch and Mr. Mitchell that they would look into the hostilities suffered by Plaintiff-Estrada, absolutely nothing was done by Liberty to stop the harassment and hostile work environment, and the appalling discriminatory treatment continued unabated.

25.     For instance, sometime in January or February 2018, there arose an issue on location involving a piece of equipment (a hydrator) that Plaintiff was operating, and a second piece of equipment (a blender), which Paul Zaratewats was operating. At some point, Mr. Zaratewats had issues with the Blender.  Mr. Jackson however, automatically jumped to conclusions and assumed it was Plaintiff-Estrada's fault. Later that day, Plaintiff-Estrada and Mr. Zaratewats were talking in Spanish about the issue.  When Mr. Jackson heard Plaintiff-Estrada speaking Spanish, he humiliated Plaintiff-Estrada in front of the entire crew by screaming, "I already fucking told you, to stop speaking fucking Spanish! If you have something to say, say it to me in fucking English!  I already told you I'm not going to put up with this Old Man, Cry Baby Bullshit!"  This was typical of how Mr. Jackson treated Plaintiff-Estrada daily. Neither Mr. Jackson nor Mr. Woodall ever treated other similarly situated workers the same way.

7

*Plaintiffs' Original Complaint*

26.    In the final incident, which led to Plaintiff-Estrada's constructive discharge in March 2018, Mr. Jackson asked Plaintiff-Estrada to drive an employee to the yard because he had a family emergency. This was around 1 a.m. The distance between the location and the yard is nearly two hours. A round trip to the yard could take up to three and a half hours with traffic.

27.    When Plaintiff-Estrada began heading back, Mr. Jackson repeatedly called Plaintiff-Estrada. He screamed at Plaintiff-Estrada, asking him, "where the fuck are you!" and asking why he was not back on location.  Plaintiff-Estrada asked Mr. Jackson to please stop yelling at him and told Mr. Jackson that not only was Plaintiff-Estrada not supposed to be on the phone while driving but that he was only thirty minutes away. During those thirty minutes, Mr. Jackson called Plaintiff-Estrada repeatedly because Plaintiff-Estrada had not yet returned, and because he was not answering his phone.  Plaintiff-Estrada, however, was not going to violate company policy by speaking on the phone or speeding, so he did not answer the phone. When Plaintiff-Estrada returned to location, Mr. Jackson saw Plaintiff-Estrada and immediately began screaming at him from across the yard. Mr. Jackson snapped his fingers and pointed at the ground, as if Plaintiff-Estrada were a dog, and told Plaintiff-Estrada to "come to him now!" Mr. Jackson then began to scream at Plaintiff-Estrada simply because he did not answer his calls while driving back to the location.

28.    Plaintiff-Estrada was extremely nervous and afraid at that moment and therefore asked him to wait so that he could get a translator. Mr. Jackson screamed at Plaintiff-Estrada, "you don't need a fucking translator!" At that time Pedro Velasquez ran over to try to intervene and began speaking to him in Spanish.  Plaintiff-Estrada told Mr. Velasquez the only reason Plaintiff-Estrada did not answer was because he was driving, and that Plaintiff-Estrada was not

8

going to rush back and speed. During this entire time, Mr. Jackson was in Plaintiff-Estrada's face pounding on his chest saying, "I told you, you don't need a fucking translator, speak to me in fucking English!" He repeated this over and over and over again.

29.     At that point, other supervisors on location had to pull Mr. Jackson back from Plaintiff-Estrada. Mr. Woodall pulled Mr. Jackson back telling him, "hey, you need to stop. You're taking this way too far!" Mr. Jackson stepped back and told Mr. Woodall, "you know what, take his ass to the fucking yard!" Mr. Jackson then looked at Plaintiff-Estrada and said, "I may not have the power to fire your ass, but Clayton does!" Then Mr. Jackson turned back to Mr. Woodall and told him, "take his old ass to the fucking yard!" While this was going on, Plaintiff-Estrada sent his son Plaintiff-Tremari a text message saying, "Hey just to let you know Mr. Jackson is trying to get me fired." All of this was witnessed by numerous people.

30.     Plaintiff-Tremari immediately reached out to Mr. Mitchell and told him about the entire incident pleading for him to do something. He also reminded Mr. Mitchell that he had complained about this before. Mr. Mitchell claimed that he did not know anything about these issues - which was a flat out lie. Plaintiff-Tremari complained to Mr. Mitchell that he had promised to take care of the situation but that he had not done anything because the harassment had increased. Mr. Mitchell once again told Plaintiff-Tremari that he would investigate. Plaintiff-Tremari then called Mr. Avila to get the full story on the incident, and Mr. Avila confirmed the entire incident.

31.     Mr. Camenisch then called Plaintiff-Tremari. Plaintiff-Tremari again told Mr. Camenisch that Mr. Jackson continually got in Plaintiff-Estrada's face and screamed at and harassed Plaintiff-Estrada. Mr. Camenisch laughed about this and told Plaintiff-Tremari, "there

*Plaintiffs' Original Complaint*

is no policy stating that you can't get into anyone's face, Thomas." Plaintiff-Tremari replied, "wow, so I guess pounding on our chest and getting into our employees' faces is acceptable?" Mr. Camenisch merely said he would speak to Mr. Mitchell to find out what was going on.

32.     Mr. Camenisch later called Plaintiff-Tremari. Mr. Camenisch made numerous excuses for Mr. Jackson and told Plaintiff-Tremari that he needed to "understand where Drake is coming from." Plaintiff-Tremari followed up with Mr. Mitchell later, and Mr. Mitchell told Plaintiff-Tremari that he was going to investigate. The very next day, Plaintiff-Tremari spoke to Plaintiff-Estrada and Mr. Avila to find out if Mr. Mitchell had done anything.  Every single one of the men told Plaintiff-Tremari that Mr. Mitchell simply talked to them.  He took no statements and did not ask them to write anything down.  Mr. Mitchell filed no documentation on the incident, nor was any report on the incident documented.

33.     Plaintiff-Tremari spoke again to Mr. Camenisch. Mr. Camenisch claimed that Plaintiff-Tremari was the real problem. Mr. Camenisch instructed Plaintiff-Tremari to "let it go and move on."

34.     On March 21, 2018, Plaintiff-Estrada resigned from Liberty because of the extremely hostile work environment and the discrimination he was forced to endure based on Plaintiff's age, race, and national origin.

35.     Plaintiff-Estrada believes his rights have been violated pursuant to Title VII, the ADEA, and the TCHRA.

*THOMAS TREMARI*

36.     Plaintiff-Tremari began working for Liberty on August 2, 2017, as an Equipment

*Plaintiffs' Original Complaint*

Operator 3.  Because Plaintiff-Tremari was experienced, skilled, and qualified for the job, he quickly rose to the rank of Service Leader.  From the very beginning of Plaintiff-Estrada's time with Liberty, he was harassed, humiliated, abused and in all manners discriminated against based on his race, age, and national origin. When Plaintiff-Tremari tried to put a stop to the abuse, Plaintiff-Tremari was also harassed.

37.    Plaintiff-Tremari engaged in a statutorily protected activity by opposing what he reasonably believed to be an unlawful employment practice; (2) an adverse action was taken against the employee; and (3) there existed a causal connection in that, but for the protected activity, the employer would not have taken the adverse action.

38.    Plaintiff-Tremari was aware that Liberty's culture of permitting supervisors to berate and threaten the livelihood of Spanish speakers in their workforce is unlawful, and he reported these violations to several individuals at Liberty. Plaintiff-Tremari reported incidents of harassment towards several Liberty workers to James Mitchell, a supervisor at Liberty.  Mr. Mitchell promised to look into the incidents and resolve them.

39.    A month later, the same workers who reported the harassment to Plaintiff-Tremari stated the harassment was continuing and were told by supervisors that the harassment would continue until the stopped speaking Spanish.

40.    In January 2018, while at a company meeting, Plaintiff-Tremari asked about the consequences for harassment at Liberty.  Mr. Mitchell was sitting near Plaintiff-Tremari at the time and Mr. Mitchell once again reassured Plaintiff-Tremari that the situation had been "dealt with". However, the harassing behavior continued.

41.    The situation came to a head in March 2018, when Drake Jackson began to yell

11

at one of the workers, Plaintiff-Estrada, for speaking Spanish. The situation got so heated that one of the other supervisors had to restrain Mr. Jackson. That same day, Plaintiff-Tremari again made a complaint to Mr. Camenish, management at Liberty about the enforcement of the policy as Mr. Jackson was threatening to fire Plaintiff-Estrada for speaking Spanish.

42.     Mr. Camenish never issued warnings or disciplined Mr. Jackson. Instead, he told Plaintiff-Tremari to "let all of this go" and asked him to understand Mr. Jackson's point of view. Finally, Mr. Mitchell assured Plaintiff-Tremari that he would conduct a full investigation of the incident. However, when Plaintiff-Tremari questioned the witnesses, he was told that no statements were taken, and no incident reports were made. Plaintiff-Tremari followed up with the Human Resources department for Liberty and was informed that they had no record of an investigation into the event.However, following the discussion that Mr. Camenish had with Mr. Jackson, Plaintiff-Tremari was subjected to unwanted and harassing text messages and phone calls from Mr. Jackson regarding the incident. Mr. Camenish, who was aware of the harassment, did nothing to prevent these communications.

43.     Plaintiff-Tremari could see that the company would always take Mr. Jackson's side and permit this harassment of both himself and his father (Plaintiff-Estrada). Plaintiff-Tremari saw there was no future for him at Liberty and felt that he had no choice but to resign. His resignation came due to the futility of opposing the unlawful English-only practice at Liberty.

44.     As the constructive discharge is an adverse employment action and came as a direct result of Liberty's failure to investigate the complaints and take action, Plaintiff-Tremari can establish both a constructive discharge claim and a retaliation claim.

12

*Plaintiffs' Original Complaint*

*TOMAS VELASQUEZ-ESTRADA CAUSES OF ACTION*

## VI.    COUNT 1 – TITLE VII RACE DISCRIMINATION

45.     Plaintiffs incorporate by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

46.     Defendant intentionally engaged in unlawful employment practices involving Plaintiff-Estrada because of his race (i.e., Hispanic).

47.     Defendant discriminated against Plaintiff-Estrada in connection with the compensation, terms, conditions, and privileges of employment; or limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive Plaintiff of any employment opportunity or adversely affect his status because of Plaintiff's race (i.e., Hispanic), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).

## VII.    COUNT 2 – TCHRA RACE DISCRIMINATION

48.     Plaintiffs incorporate by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

49.     Defendant intentionally engaged in unlawful employment practices involving Plaintiff-Estrada because of his race (i.e., Hispanic).

50.     Defendant discriminated against Plaintiff-Estrada in connection with the compensation, terms, conditions, and privileges of employment; or limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive Plaintiff of any employment opportunity or adversely affect his status because of Plaintiff's race (i.e., Hispanic), in violation of Texas Labor Code § 21.051 et seq.

*Plaintiffs' Original Complaint*

## VIII.    COUNT 3 – TITLE VII NATIONAL ORIGIN DISCRIMINATION

51.    Plaintiffs incorporate by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

52.    Defendant intentionally engaged in unlawful employment practices involving Plaintiff-Estrada because of his national origin (i.e., Mexico).

53.    Defendant discriminated against Plaintiff-Estrada in connection with the compensation, terms, conditions, and privileges of employment; or limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive Plaintiff of any employment opportunity or adversely affect his status because of Plaintiff's national origin (i.e., Mexico), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).

## IX.    COUNT 4 – TCHRA NATIONAL ORIGIN DISCRIMINATION

54.    Plaintiffs incorporate by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

55.    Defendant intentionally engaged in unlawful employment practices involving Plaintiff-Estrada because of his national origin (i.e., Mexico).

56.    Defendant discriminated against Plaintiff-Estrada in connection with the compensation, terms, conditions, and privileges of employment; or limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive Plaintiff of any employment opportunity or adversely affect his status because of Plaintiff's national origin (i.e., Mexico), in violation of Texas Labor Code § 21.051.

## X.    COUNT 5 – ADEA AGE DISCRIMINATION

57.    Plaintiffs incorporate by reference all of the foregoing allegations in each of the

14

*Plaintiffs' Original Complaint*

paragraphs above as if fully set forth herein.

58.    Defendant intentionally engaged in unlawful employment practices involving Plaintiff-Estrada because of his age, sixty-three (63) years old.

59.    Defendant discriminated against Plaintiff-Estrada in connection with the compensation, terms, conditions, and privileges of employment; or limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive Plaintiff of any employment opportunity or adversely affect his status because of Plaintiff's age, sixty-three (63) years old, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.

## XI.  COUNT 6 – TCHRA AGE DISCRIMINATION

60.    Plaintiffs incorporate by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

61.    Defendant intentionally engaged in unlawful employment practices involving Plaintiff-Estrada because of his age, sixty-three (63) years old.

62.    Defendant discriminated against Plaintiff-Estrada in connection with the compensation, terms, conditions, and privileges of employment; or limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive Plaintiff of any employment opportunity or adversely affect his status because of Plaintiff's age, sixty-three (63) years old, in violation of Texas Labor Code § 21.051.

## XII.  COUNT 7 – SECTION 1981 RACIAL DISCRIMINATION

63.    Plaintiffs hereby incorporate by reference all of the allegations contained in the above-identified paragraphs as though fully set forth herein.

64.    Pursuant to 42 U.S.C. §1981 Plaintiff-Estrada pleads a cause of action against

*Plaintiffs' Original Complaint*

the Defendant for racial discrimination.

65.    Plaintiff-Estrada was treated differently than other employees that are not of Hispanic descent. Defendant engaged in discrimination against Plaintiff-Estrada, Hispanic male, by a constructive discharge, harassment and making a hostile work environment based upon Plaintiff's race and national origin—depriving Plaintiff-Estrada of equal employment opportunities and otherwise adversely affecting his status as an employee. As a result of Defendant's discrimination, Plaintiff-Estrada suffered damages (in an amount that is within the jurisdictional limits of this Court).

*THOMAS TREMARI'S CAUSES OF ACTION*

## XII.  COUNT 8 – TITLE VII RETALIATION

66.    Plaintiffs incorporate by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

67.    Defendant intentionally retaliated against Plaintiff-Tremari because of the complaints of race and national origin discrimination made to Defendant prior to Plaintiff-Tremari's constructive termination.

## XIV.  COUNT 9 – TCHRA RETALIATION

68.    Plaintiffs incorporate by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

69.    Defendant intentionally retaliated against Plaintiff-Tremari because of the complaints of discrimination made to Defendant in violation of the Texas Labor Code § 21.055.

*Plaintiffs' Original Complaint*

## XV.  COUNT 10 – ADEA RETALIATION

70.     Plaintiffs incorporate by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

71.     Defendant intentionally retaliated against Plaintiff-Tremari because of complaints made to Defendant of age discrimination in violation of the ADEA.

## XVI.  COUNT 11 - SECTION 1981 RETALIATION

72.     Plaintiffs hereby incorporate by reference all of the allegations contained in the above-identified paragraphs as though fully set forth herein.

73.     Pursuant to 42 U.S.C. § 1981, Plaintiff-Tremari pleads a cause of action against Defendant for retaliation. Defendant intentionally retaliated against Plaintiff-Tremari because Plaintiff-Tremari complained to Defendant about the race discrimination that Plaintiff-Estrada experienced while employed by Defendant.

74.     After Plaintiff-Tremari's protected complaints of the racially discriminatory actions by Defendant, Plaintiff-Tremair was subjected to a hostile work environment and subsequent constructive termination, which was a violation of 42 U.S.C. §1981. As a result of Defendant's retaliation, Plaintiff-Tremari suffered damages (in an amount that is within the jurisdictional limits of this Court).

## XVII.  JURY DEMAND

75.     Plaintiffs demand a jury on all issues to be tried in this matter. Plaintiffs submit the jury demand and herein submit the jury fee.

## XVII.  PRAYER

76.     WHEREFORE, PREMISES CONSIDERED, Plaintiffs prays that Defendant be

17

*Plaintiffs' Original Complaint*

cited to appear and answer herein, and that on final trial, Plaintiffs have judgment against Defendant for:

    a.  All damages to which Plaintiffs may be entitled pursuant to this Original Complaint, or any amendments thereto, including but not limited to back pay, future wages, reinstatement, upgrading, and compensation for benefits not received;

    b.  Compensatory damages, including, but not limited to, emotional distress;

    c.  Past, present, and future physical pain and mental suffering;

    d.  Punitive damages;

    e.  Reasonable attorneys' fees, as allowed by law (with conditional awards in the event of appeal);

    f.  Pre-judgment interest at the highest rate permitted by law;

    g.  Post-judgment interest from the judgment until paid at the highest rate permitted by law;

    h.  Costs of Court; and

    i.  Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Original Complaint or by any proper amendments thereto.

*Plaintiffs' Original Complaint*

Respectfully submitted,



_____
Alfonso Kennard, Jr.
Texas Bar No. 24036888
S.D. ID 713316
2603 Augusta Dr., Suite 1450
Houston, Texas 77057
Telephone: (713) 742-0900
Facsimile: (713) 742-0951
Email: alfonso.kennard@kennardlaw.com
**ATTORNEY-IN-CHARGE FOR PLAINTIFFS**

19

*Plaintiffs' Original Complaint*