IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **THOMAS TREMARI &** | § | |
| **TOMAS VELASQUEZ-ESTRADA,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 1:19-cv-00655** |
| | § | |
| **LIBERTY OILFIELD SERVICES, LLC,** | § | |
| **LIBERTY OILFIELD SERVICES, INC.** | § | |
| | § | |
| **Defendants.** | § | |

## DEFENDANTS' ORIGINAL ANSWER AND DEFENSES

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Liberty Oilfield Services, LLC ("Liberty"), and Liberty Oilfield Services Inc. ("Defendants"), Defendants in the above-referenced matter, and subject to their Motion To Transfer Venue, file their Answer and Defenses to Plaintiffs' Original Complaint ("Complaint"). The numbered paragraphs below correspond to the numbered paragraphs in Plaintiffs' Complaint to the extent possible. Defendants deny each and every allegation set forth in Plaintiffs' Original Complaint except as specifically admitted, qualified, explained, clarified, or otherwise pleaded below, and specifically answer as follows:

### I. PARTIES

1.      Plaintiffs Thomas Tremari and Tomas Velasquez-Estrada are individuals residing in Bexar County, Texas.

**RESPONSE**: Defendants admit that Plaintiff Tremari and Plaintiff Velasquez-Estrada identified themselves as residing in San Antonio, Bexar County, Texas during their periods

of employment with Liberty.  Defendants are currently without information or knowledge concerning Plaintiffs' current residency, and therefore, deny the same.

2.     Defendant Liberty is a Limited Liability Company formed in the state of Delaware and authorized to conduct business in the State of Texas. Defendant may be served with process by serving its registered agent, CT Corporation System, 1999 Bryan St. Suite 900, Dallas, Texas, 75201-3136.

**RESPONSE**:  Defendants admit the allegations in Paragraph 2 of the Complaint.

3.     Defendant Liberty Oilfield Services, Inc., is a for-profit corporation formed in the state of Delaware and authorized to conduct business in the State of Texas. Defendant may be served with process by serving its registered agent, CT Corporation System, 1999 Bryan St. Suite 900, Dallas, Texas, 75201-3136.

**RESPONSE**:  Defendants admit the allegations in Paragraph 3 of the Complaint.

## II. JURISDICTION

4.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiffs' causes of action arise under federal statutes, namely Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), and the Age Discrimination in Employment Act of 1967, 29 USC §6101.

**RESPONSE**:  Defendants admit that Plaintiffs assert violations of federal law, namely Title VII and the Age Discrimination in Employment Act ("ADEA"), but Defendants deny any violation of the law.  Defendants admit that this court has jurisdiction pursuant to 28 U.S.C. § 1331.

5.     This suit arises under Section 1981 of the Civil Rights Act of 1866, as amended. Therefore, this Court has subject matter jurisdiction pursuant to Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

**RESPONSE**:  Defendants admit that Plaintiffs assert violation of 42 U.S.C. § 1981, but Defendants deny any violation of the law.

6.    Additionally, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' similar state claims that arise under the Texas Commission on Human Rights Act, which is codified in Chapter 21 of the Texas Labor Code, Texas Labor Code § 21.001 et seq. (hereinafter referred to as the "TCHRA"), because such claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

**RESPONSE**:  Defendants admit that Plaintiffs assert violation of the Texas Commission on Human Rights Act ("TCHRA") but Defendants deny any violation of the law. Defendants admit that this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

7.    Venue is proper in the Southern District of Texas - Houston Division pursuant to 28 U.S.C. § 1391(a) because this is the judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

**RESPONSE**:  Defendants deny the allegations in Paragraph 7 of the Complaint.

### III.  NATURE OF THE ACTION

8.    This is an action brought pursuant to Title VII, ADEA, and TCHRA on the grounds that Plaintiff, Thomas Tremari was retaliated against after participating in protected activity under Title VII and the ADEA, namely opposing discrimination and harassment in the workplace. Plaintiff Tomas Velasquez-Estrada was discriminated against, harassed, and subjected to a hostile work environment in violation of Title VII for race and national origin discrimination and the ADEA. The action is to correct and recover for Defendant's unlawful employment practices

3

including the retaliation Plaintiffs' protected activities involving their complaints of discrimination and retaliation.

**RESPONSE**:  Defendants admit that Plaintiff Tremari asserts retaliation claims under Title VII, the ADEA, and TCHRA, but Defendants deny violation of the law.  Defendants admit that Plaintiff Velasquez-Estrada alleges race, national origin, and age discrimination, harassment, and retaliation under Title VII, the ADEA, and TCHRA, but Defendants deny any violation of the law.  Defendants deny all remaining allegations in Paragraph 8 of the Complaint.

9.    This is also an action to correct and recover for Defendant's TCHRA [*sic*]. Specifically, Plaintiffs complain that Defendant discriminated and retaliated against them on the basis of the perception of age, race, national origin and for engaging in protected activities. See Texas Labor Code § 21.001 et seq.

**RESPONSE**: Defendants admit that Plaintiff Tremari asserts retaliation claims under Title VII, the ADEA, and TCHRA, but Defendants deny violation of the law.  Defendants admit that Plaintiff Velasquez-Estrada alleges race, national origin, and age discrimination, harassment, and retaliation under Title VII, the ADEA, and TCHRA, but Defendants deny any violation of the law.  Defendants deny all remaining allegations in Paragraph 9 of the Complaint.

10.    This is an action brought pursuant to Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 to correct and recover for Defendant Liberty Oilfield Service's unlawful employment practices on the basis of Plaintiffs' race (Hispanic).

**RESPONSE**: Defendants admit that Plaintiffs assert violations of 42 U.S.C. § 1981, but Defendants deny any violation of the law. Defendants deny all remaining allegations in Paragraph 10 of the Complaint.

## IV.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

11.    On July 10, 2018, Plaintiffs filed a charge with the U.S. Equal Employment Opportunity Commission (hereinafter referred to as the "EEOC") against Defendant for discrimination based on disability and retaliation (Charge Nos. 451-2018-03159 and 451-2018-03175). This charge was filed for discrimination and retaliation. (See Exhibit 1, which is attached hereto and incorporated by reference).

**RESPONSE**: Defendants admit that Plaintiffs have attached their charges of discrimination as Exhibit 1 to their Complaint, both of which were signed by Plaintiffs on July 3, 2018. Defendants are without information or knowledge as to the dates the charges were actually filed with the EEOC, and therefore, deny Plaintiffs' allegation concerning the date of filing. Defendants deny the allegations set forth in the charges attached to Exhibit 1 of the Complaint and deny all remaining allegations in Paragraph 11 of the Complaint.

12.    Subsequently, the EEOC issued Plaintiff a Notice of Right to Sue, dated April 29, 2019. (See Exhibit 2, which is attached hereto and incorporated by reference). Plaintiffs file this lawsuit within ninety (90) days of receiving the Right to Sue notice. Therefore, this lawsuit is timely filed.

**RESPONSE**: Defendants admit that Plaintiffs have attached the Notice of Right to Sue issued by the Equal Employment Opportunity Commission to each Plaintiff on April 29, 2019. Defendants are without information or knowledge as to when Plaintiffs received

their Notice of Right to Sue but Defendants admit that the Complaint was filed within 90 days of the date the Notice of Right to Sue was issued. Defendants deny all remaining allegations of Paragraph 12 of the Complaint.

13.    No administrative exhaustion or other conditions precedent are required prior to the filing of claims under 42 U.S.C. §1983 (or 42 U.S.C. §1981).

**RESPONSE**:  The allegations in Paragraph 13 of the Complaint are a statement of law, which Defendants are neither required to admit nor deny. To the extent a response is required, Defendants deny the allegations.

## V.  [ALLEGED] FACTS

### *TOMAS VELASQUEZ-ESTRADA*

14.    Plaintiff Tomas Velasquez- Estrada began working for Liberty on July 25, 2017. Plaintiff-Estrada was an extremely hard worker who is very skilled and qualified in his field. Plaintiff-Estrada is sixty-three (63) years old and is Hispanic from Mexico. Plaintiff-Estrada speaks and understands English well, but he does have an accent. From the very beginning of his time with Liberty, Plaintiff-Estrada was harassed, humiliated, abused and in all manners discriminated against based on his race, age, and national origin.

**RESPONSE**:  Defendants admit that Plaintiff Velasquez-Estrada began working for Liberty on August 9, 2017. Defendants admit that Plaintiff Velasquez-Estrada was 63 years old at the time of his hire, and further admit that Plaintiff Velasquez-Estrada identified his national origin as being Hispanic. Defendants admit that Plaintiff Velasquez-Estrada spoke and understood English proficiently. Defendants are without information or knowledge regarding whether Plaintiff Velasquez-Estrada was born in Mexico and

6

therefore, deny the allegation. Defendants deny all remaining allegations in Paragraph 14 of the Complaint.

15.     Plaintiff-Estrada's supervisor Bobby Woodall often belittled him and asked him to do inappropriate things, humiliating Plaintiff-Estrada in front of his coworkers. For instance, in September 2017, Mr. Woodall told Plaintiff-Estrada to make the supervisor's coffee. This was not Plaintiff-Estrada's job, and Mr. Woodall did not ask any of his other crew members to do the same thing.

**RESPONSE**: Defendants deny the allegations in Paragraph 15 of the Complaint.

16.     Mr. Woodall singled Plaintiff-Estrada out for poor treatment, and would constantly yell at Plaintiff-Estrada, calling him an "old man," and would say derogatory and offensive things to him such as to "stop speaking until you learn how to speak fucking English!"

**RESPONSE**: Defendants deny the allegations in Paragraph 16 of the Complaint.

17.     Sometime in November 2017, Mr. Woodall was having issues with a pump. Plaintiff-Estrada climbed up on the pump to help Mr. Woodall. Plaintiff-Estrada had many years of experience working in oil fields, so Plaintiff-Estrada offered to fix the pump at issue. Instead of being grateful for the assistance, Mr. Woodall instead screamed at Plaintiff-Estrada, telling Plaintiff-Estrada, "the day you learn how to speak fucking English is the day you can tell me how to do my fucking job!"

**RESPONSE**: Defendants deny the allegations in Paragraph 17 of the Complaint.

18.     Bobby Woodall however, was not the only person who took an immediate dislike to Plaintiff-Estrada based on Plaintiff-Estrada's age, race, and national origin. Supervisor Drake Jackson also horribly abused Plaintiff-Estrada daily. Mr. Jackson would constantly yell and

get into Plaintiff-Estrada's face. Mr. Jackson would persistently call Plaintiff-Estrada "cry baby," and "old man."

**RESPONSE**: Defendants deny the allegations in Paragraph 18 of the Complaint.

19.        Plaintiff-Estrada was harassed for every little thing and singled out for negative treatment. For instance, if any other employee forgot to fix a pump or clean something, Mr. Jackson or Mr. Woodall would not say a word. However, if Plaintiff-Estrada did not clean something or went to work on a different piece of equipment, Plaintiff-Estrada would get yelled at, or one of them would get into his face.

**RESPONSE**: Defendants deny the allegations in Paragraph 19 of the Complaint.

20.        Sometime in November 2017, Plaintiff-Tremari, who also worked for Liberty at the time as a Service Leader, spoke with Plaintiff-Estrada's co-workers - Enrique Avila. Mr. Avila told him that Plaintiff-Estrada was badly abused on the job site. Mr. Avila told Plaintiff-Tremari that Mr. Woodall called Plaintiff-Estrada "old man," and "cry baby" all the time. Mr. Avila also told Plaintiff-Tremari that Mr. Jackson and Mr. Woodall would constantly tell Plaintiff-Estrada to "stop talking until you learn how to speak English!" Plaintiff-Tremari became very upset about this - especially after he confirmed these unlawful activities with Plaintiff-Estrada, his father.

   **RESPONSE**: Defendants admit that Plaintiff Tremari also worked for Liberty Oilfield
   Services, LLC, as a Service Leader.  Defendants are without information or knowledge
   regarding alleged conversations between Plaintiff Tremari and Enrique Avila, or between
   Plaintiff Tremari and Plaintiff Velasquez-Estrada, and therefore, deny the same.
   Defendants deny the remaining allegations in Paragraph 20 of the Complaint.

21. Based on the unlawful actions being committed against Plaintiff-Estrada, on November 21, 2017, Plaintiff-Tremari called James Mitchell, Service Leader of his crew. He told Mr. Mitchell that Mr. Jackson and Mr. Woodall were harassing Plaintiff-Estrada, often telling him to "stop talking until you learn how to speak English!" He also told Mr. Mitchell that both supervisors had been yelling and belittling Plaintiff-Estrada every day and that this occurred in front of the crew. Mr. Mitchell told Plaintiff-Tremari he would speak with Mr. Jackson and Mr. Woodall and that he would handle the situation. However, Mr. Mitchell did absolutely nothing to stop the abuse. Instead, Mr. Mitchell covered the situation up and failed to report it to anyone else until Plaintiff-Tremari escalated his complaints.

> **RESPONSE**: Defendants admit that in late 2017, Plaintiff Tremari contacted Service Leader James Mitchell and stated some of Plaintiff Velasquez-Estrada's crew were making comments about Plaintiff Velasquez-Estrada's age. Defendants admit that Mitchell immediately contacted the crew and its leaders and reminded them that comments about age are not permitted. Defendants admit that Mitchell also met with Plaintiff Velasquez-Estrada to discuss Plaintiff Tremari's complaint. Defendants admit that Plaintiff Velasquez-Estrada responded, "it's good, it's good" and indicated there was nothing to worry about. Defendants deny all remaining allegations in Paragraph 21 of the Complaint.

22. Throughout December 2017, Mr. Jackson and Mr. Woodall continued to harass Plaintiff-Estrada. They told Plaintiff-Estrada daily to "stop speaking Spanish!" and called him an "old man cry baby!" when Plaintiff protested their disgusting treatment. They also refused to help Plaintiff-Estrada on the job, telling him instead, "if you need any help with anything, you have to learn to speak English first!"

> **RESPONSE**: Defendants deny the allegations in Paragraph 22 of the Complaint.

9

23.     Because Mr. Mitchell had done absolutely nothing to help Plaintiff-Estrada, on January 10, 2018, Plaintiff-Tremari tried another route to get Plaintiff-Estrada some help. Plaintiff-Tremari was in Colorado for a Liberty Service Leaders Meeting. The Company's Human Resource Director, Trace Quinnell, and a Company attorney were at the meeting discussing company policies. Plaintiff-Tremari raised his hand and asked the attorney, "what would happen if someone was to be harassed and made fun of them for the way they speak?" The attorney made it clear that this sort of action "falls under our company policy of ethnicity," and that it was "illegal." Plaintiff-Tremari turned to Mr. Mitchell, who was seated at the same table, and told him that he hoped that Mr. Mitchell handled his father's situation based on this clear Company policy. Mr. Mitchell acted very nonchalant and told Plaintiff-Tremari, "don't worry, it has been dealt with." It was abundantly clear; however, at that time, that Mr. Mitchell had done nothing to remedy the situation.

> **RESPONSE**: Defendants admit that Plaintiff Tremari attended a meeting in Colorado on January 10, 2018, wherein someone asked a question to the effect of, "What would happen if someone was to be harassed and made fun of them for the way they speak?" Defendants are without information or knowledge as to whether it was Plaintiff Tremari who asked the question, and therefore, deny the same. Defendants further admit that in response to the question, Liberty's attorney advised that such conduct could be against Liberty's policy prohibiting harassment. Defendants deny the remaining allegations in Paragraph 23 of the Complaint.

24.     Later, that same night, Plaintiff-Tremari spoke to Service Manager Clayton Camenisch about how the supervisors had belittled and humiliated Plaintiff-Estrada and the way he speaks. Mr. Camenisch told Plaintiff-Tremari that he would look into the situation. Despite the assurances of both Mr. Camenisch and Mr. Mitchell that they would look into the hostilities

suffered by Plaintiff-Estrada, absolutely nothing was done by Liberty to stop the harassment and hostile work environment, and the appalling discriminatory treatment continued unabated.

> **RESPONSE**:  Defendants admit that a few days prior to Plaintiffs' resignations, Plaintiff Tremari contacted Frac Manager Clayton Camenisch and stated some of Plaintiff Velasquez-Estrada's crew were making fun of the way Plaintiff Velasquez-Estrada spoke. Defendants admit that Plaintiff Tremari also complained that one of Plaintiff's Velasquez-Estrada's Crew Leaders, Drake Jackson, was a bully and a "hood n*gg'r" and referred to Mr. Jackson yelling at the entire crew about their coveralls.  Defendants admit that Camenisch and others investigated Plaintiff Tremari's allegations and determined they were without merit.  Defendants deny all remaining allegations in Paragraph 24 of the Complaint.

25.     For instance, sometime in January or February 2018, there arose an issue on location involving a piece of equipment (a hydrator) that Plaintiff was operating, and a second piece of equipment (a blender), which Paul Zaratewats [*sic*] was operating. At some point, Mr. Zaratewats [*sic*] had issues with the Blender. Mr. Jackson however, automatically jumped to conclusions and assumed it was Plaintiff-Estrada's fault. Later that day, Plaintiff-Estrada and Mr. Zaratewats [*sic*] were talking in Spanish about the issue. When Mr. Jackson heard Plaintiff-Estrada speaking Spanish, he humiliated Plaintiff-Estrada in front of the entire crew by screaming, "I already fucking told you, to stop speaking fucking Spanish! If you have something to say, say it to me in flicking English! I already told you I'm not going to put up with this Old Man, Cry Baby Bullshit!" This was typical of how Mr. Jackson treated Plaintiff-Estrada daily. Neither Mr. Jackson nor Mr. Woodall ever treated other similarly situated workers the same way.

> **RESPONSE**: Defendants deny the allegations in Paragraph 25 of the Complaint.

26.     In the final incident, which led to Plaintiff-Estrada's constructive discharge in March 2018, Mr. Jackson asked Plaintiff-Estrada to drive an employee to the yard because he had a family emergency. This was around 1 a.m. The distance between the location and the yard is nearly two hours. A round trip to the yard could take up to three and a half hours with traffic.

> **RESPONSE**:  Defendants admit that in March 2018, Crew Leader Drake Jackson asked Plaintiff Velasquez-Estrada to drive an employee to Defendants' yard in Cibolo, Texas, and return to the worksite. Defendants admit that the employee needed to return to the worksite because of a family emergency and that this trip occurred around 11 p.m. or midnight.  Defendants admit that the roundtrip travel from the worksite to the yard in Cibolo should have taken a total of four hours and Plaintiff was gone for six hours. Defendants deny the remaining allegations in Paragraph 26 of the Complaint.

27.     When Plaintiff-Estrada began heading back, Mr. Jackson repeatedly called Plaintiff-Estrada. He screamed at Plaintiff-Estrada, asking him, "where the fuck are you!" and asking why he was not back on location. Plaintiff-Estrada asked Mr. Jackson to please stop yelling at him and told Mr. Jackson that not only was Plaintiff-Estrada not supposed to be on the phone while driving but that he was only thirty minutes away. During those thirty minutes, Mr. Jackson called Plaintiff-Estrada repeatedly because Plaintiff-Estrada had not yet returned, and because he was not answering his phone. Plaintiff-Estrada, however, *was* not going to violate company policy by speaking on the phone or speeding, so he did not answer the phone. When Plaintiff-Estrada returned to location, Mr. Jackson saw Plaintiff-Estrada and immediately began screaming at him from across the yard. Mr. Jackson snapped his fingers and pointed at the ground, as if Plaintiff-Estrada were a dog, and told Plaintiff-Estrada to "come to him now!" Mr. Jackson then began to

scream at Plaintiff-Estrada simply because he did not answer his calls while driving back to the location.

> **RESPONSE**: Defendants admit that Jackson called Plaintiff Velasquez-Estrada to determine his whereabouts as Plaintiff Velasquez-Estrada's roundtrip to Defendants' yard had taken three hours more than it should have required. Defendants admit that when Jackson called, Plaintiff Velasquez-Estrada did not provide a reason for his trip taking so long and instead, hung up on Jackson. Defendants admit that Jackson tried to call Plaintiff Velasquez-Estrada back, hoping to find out when Plaintiff Velasquez-Estrada would return, but Plaintiff Velasquez-Estrada once again hung up on Jackson. Defendants admit that when Plaintiff Velasquez-Estrada finally returned to the jobsite, Jackson called Plaintiff Velasquez-Estrada over to him to discuss his long trip and his hanging up on Jackson. Defendants admit that Plaintiff Velasquez-Estrada wagged his finger back and forth, indicating "no," and pointed at the ground in front of him, indicating he wanted Jackson to come to him. Defendants admit that Plaintiff Velasquez-Estrada then approached Jackson, raising his voice and yelling in Spanish. Defendants admit that Plaintiff Velasquez-Estrada and Jackson ultimately went their separate ways, with Plaintiff Velasquez-Estrada never explaining why he was gone for an extra three hours that day or why he repeatedly hung up on Jackson. Defendants deny all remaining allegations in Paragraph 27 of the Complaint.

28.     Plaintiff-Estrada was extremely nervous and afraid at that moment and therefore asked him to wait so that he could get a translator. Mr. Jackson screamed at Plaintiff-Estrada, "you don't need a fucking translator!" At that time Pedro Velasquez ran over to try to intervene and began speaking to him in Spanish. Plaintiff-Estrada told Mr. Velasquez the only reason Plaintiff-

Estrada did not answer was because he was driving, and that Plaintiff-Estrada was not going to rush back and speed. During this entire time, Mr. Jackson was in Plaintiff-Estrada's face pounding on his chest saying, "I told you, you don't need a fucking translator, speak to me in fucking English!" He repeated this over and over and over again.

> **RESPONSE**: Defendants admit that Plaintiff Velasquez-Estrada was yelling at Mr. Jackson in Spanish, so Mr. Jackson told Plaintiff Velasquez-Estrada that if he had something to say to Mr. Jackson, to say it in English, so Mr. Jackson could understand. Defendants deny the allegations in Paragraph 28 of the Complaint.

29.    At that point, other supervisors on location had to pull Mr. Jackson back from Plaintiff-Estrada. Mr. Woodall pulled Mr. Jackson back telling him, "hey, you need to stop. You're taking this way too far!" Mr. Jackson stepped back and told Mr. Woodall, "you know what, take his ass to the fucking yard!" Mr. Jackson then looked at Plaintiff-Estrada and said, "I may not have the power to fire your ass, but Clayton does!" Then Mr. Jackson turned back to Mr. Woodall and told him, "take his old ass to the fucking yard!" While this was going on, Plaintiff-Estrada sent his son Plaintiff-Tremari a text message saying, "Hey just to let you know Mr. Jackson is trying to get me fired." All of this was witnessed by numerous people.

> **RESPONSE**: Defendants admit that Plaintiff Velasquez-Estrada accused Mr. Jackson of "trying to fire him." Defendants admit that Mr. Woodall joined the discussion between Mr. Jackson and Plaintiff Velasquez-Estrada. Defendants admit that Mr. Jackson told Plaintiff Velasquez-Estrada he did not have any authority to fire him. Defendants deny the remaining allegations in Paragraph 29 of the Complaint.

30.    Plaintiff-Tremari immediately reached out to Mr. Mitchell and told him about the entire incident pleading for him to do something. He also reminded Mr. Mitchell that he had

complained about this before. Mr. Mitchell claimed that he did not know anything about these issues - which was a flat out lie. Plaintiff-Tremari complained to Mr. Mitchell that he had promised to take care of the situation but that he had not done anything because the harassment had increased. Mr. Mitchell once again told Plaintiff-Tremari that he would investigate. Plaintiff-Tremari then called Mr. Avila to get the full story on the incident, and Mr. Avila confirmed the entire incident.

> **RESPONSE**: Defendants are without information or knowledge as to Plaintiff Tremari's alleged conversation with Mr. Avila, and therefore, deny the same. Defendants admit that on or about March 2018, Plaintiff Tremari told Mitchell that Jackson had yelled at Plaintiff Velasquez-Estrada. Defendants admit that Mitchell investigated Plaintiff Tremari's allegation and confirmed that Plaintiff Velasquez-Estrada began yelling at Jackson first and that Jackson raised his voice at Plaintiff Velasquez-Estrada in response, telling Plaintiff Velasquez-Estrada to get out of his face. Defendants deny the remaining allegations in Paragraph 30 of the Complaint.

31.    Mr. Camenisch then called Plaintiff-Tremari. Plaintiff-Tremari again told Mr. Camenisch that Mr. Jackson continually got in Plaintiff-Estrada's face and screamed at and harassed Plaintiff-Estrada. Mr. Camenisch laughed about this and told Plaintiff-Tremari, "there is no policy stating that you can't get into anyone's face, Thomas." Plaintiff-Tremari replied, "wow, so I guess pounding on our chest and getting into our employees' faces is acceptable?" Mr. Camenisch merely said he would speak to Mr. Mitchell to find out what was going on.

> **RESPONSE**: Defendants deny the allegations in Paragraph 31 of the Complaint.

32.    Mr. Camenisch later called Plaintiff-Tremari. Mr. Camenisch made numerous excuses for Mr. Jackson and told Plaintiff-Tremari that he needed to "understand where Drake is

coming from." Plaintiff-Tremari followed up with Mr. Mitchell later, and Mr. Mitchell told Plaintiff-Tremari that he was going to investigate. The very next day, Plaintiff-Tremari spoke to Plaintiff-Estrada and Mr. Avila to find out if Mr. Mitchell had done anything. Every single one of the men told Plaintiff-Tremari that Mr. Mitchell simply talked to them. He took no statements and did not ask them to write anything down. Mr. Mitchell filed no documentation on the incident, nor was any report on the incident documented.

> **RESPONSE**:  Defendants are without information or knowledge as to Plaintiff Tremari's alleged conversations with Plaintiff Velasquez-Estrada and/or Mr. Avila.  Defendants deny the remaining allegations in Paragraph 32 of the Complaint.

33.     Plaintiff-Tremari spoke again to Mr. Camenisch. Mr. Camenisch claimed that Plaintiff-Tremari was the real problem. Mr. Camenisch instructed Plaintiff-Tremari to "let it go and move on."

> **RESPONSE**:  Defendants deny the allegations in Paragraph 33 of the Complaint.

34.     On March 21, 2018, Plaintiff-Estrada resigned from Liberty because of the extremely hostile work environment and the discrimination he was forced to endure based on Plaintiffs' age, race, and national origin.

> **RESPONSE**:  Defendants admit that Plaintiff Velasquez-Estrada provided notice of his intent to resign his employment on March 21, 2018, and his effective separation date was March 22, 2018.  Defendants deny the remaining allegations in Paragraph 34 of the Complaint.

35.     Plaintiff-Estrada believes his rights have been violated pursuant to Title VII, the ADEA, and the TCHRA.

> **RESPONSE**:  Defendants deny the allegations in Paragraph 35 of the Complaint.

*THOMAS TREMARI*

36.    Plaintiff-Tremari began working for Liberty on August 2, 2017, as an Equipment Operator 3. Because Plaintiff-Tremari was experienced, skilled, and qualified for the job, he quickly rose to the rank of Service Leader. From the very beginning of Plaintiff-Estrada's time with Liberty, he was harassed, humiliated, abused and in all manners discriminated against based on his race, age, and national origin. When Plaintiff-Tremari tried to put a stop to the abuse, Plaintiff-Tremari was also harassed.

> **RESPONSE**: Defendants admit that Plaintiff Tremari began working for Liberty Oilfield Services, LLC, on June 28, 2017, as a Core Equipment Operator I and promoted Plaintiff Tremari to Service Leader on October 25, 2017.  Defendants deny the remaining allegations in Paragraph 36 of the Complaint.

37.    Plaintiff-Tremari engaged in a statutorily protected activity by opposing what he reasonably believed to be an unlawful employment practice; (2) an adverse action was taken against the employee; and (3) there existed a causal connection in that, but for the protected activity, the employer would not have taken the adverse action.

> **RESPONSE**: The allegations in Paragraph 27 are legal conclusions, which Defendants are neither required to admit nor deny.  To the extent a response is required, Defendants deny the allegations in Paragraph 37 of the Complaint.

38.    Plaintiff-Tremari was aware that Liberty's culture of permitting supervisors to berate and threaten the livelihood of Spanish speakers in their workforce is unlawful, and he reported these violations to several individuals at Liberty. Plaintiff-Tremari reported incidents of harassment towards several Liberty workers to James Mitchell, a supervisor at Liberty. Mr. Mitchell promised to look into the incidents and resolve them.

**RESPONSE**: Defendants admit that in late 2017, Plaintiff Tremari contacted Mitchell and stated some of Plaintiff Velasquez-Estrada's co-workers were making comments about Plaintiff Velasquez-Estrada's age. Defendants admit that Mitchell immediately contacted the crew and reminded the crew that comments about age are not permitted. Defendants admit that Mitchell also met with Plaintiff Velasquez-Estrada to discuss Plaintiff Tremari's complaint. Defendants admit that Plaintiff Velasquez-Estrada responded, "it's good, it's good" and indicated there was nothing to worry about. Defendants deny all remaining allegations in Paragraph 38 of the Complaint.

39.     A month later, the same workers who reported the harassment to Plaintiff-Tremari stated the harassment was continuing and were told by supervisors that the harassment would continue until the stopped speaking Spanish.

**RESPONSE**: Defendants are without information or knowledge as to alleged conversations between Plaintiff Tremari and unidentified co-workers, and therefore, deny the same. Defendants deny the remaining allegations in Paragraph 39 of the Complaint.

40.     In January 2018, while at a company meeting, Plaintiff-Tremari asked about the consequences for harassment at Liberty. Mr. Mitchell was sitting near Plaintiff-Tremari at the time and Mr. Mitchell once again reassured Plaintiff-Tremari that the situation had been "dealt with". However, the harassing behavior continued.

**RESPONSE**: Defendants admit that Plaintiff Tremari attended a meeting in Colorado on January 10, 2018, wherein someone asked a question to the effect of, "What would happen if someone was to be harassed and made fun of them for the way they speak?" Defendants are without information or knowledge as to whether it was Plaintiff Tremari who asked the

question, and therefore, deny the same.  Defendants deny the allegations in Paragraph 40 of the Complaint.

41.      The situation came to a head in March 2018, when Drake Jackson began to yell at one of the workers, Plaintiff-Estrada, for speaking Spanish. The situation got so heated that one of the other supervisors had to restrain Mr. Jackson. That same day, Plaintiff-Tremari again made a complaint to Mr. Camenish, management at Liberty about the enforcement of the policy as Mr. Jackson was threatening to fire Plaintiff-Estrada for speaking Spanish.

**RESPONSE**: Defendants deny the allegations in Paragraph 41 of the Complaint.

42.      Mr. Camenish never issued warnings or disciplined Mr. Jackson. Instead, he told Plaintiff-Tremari to "let all of this go" and asked him to understand Mr. Jackson's point of view. Finally, Mr. Mitchell assured Plaintiff-Tremari that he would conduct a full investigation of the incident. However, when Plaintiff-Tremari questioned the witnesses, he was told that no statements were taken, and no incident reports were made. Plaintiff-Tremari followed up with the Human Resources department for Liberty and was informed that they had no record of an investigation into the event.  However, following the discussion that Mr. Camenish had with Mr. Jackson, Plaintiff-Tremari was subjected to unwanted and harassing text messages and phone calls from Mr. Jackson regarding the incident. Mr. Camenish, who was aware of the harassment, did nothing to prevent these communications.

**RESPONSE**: Defendants deny the allegations in Paragraph 42 of the Complaint.

43.      Plaintiff-Tremari could see that the company would always take Mr. Jackson's side and permit this harassment of both himself and his father (Plaintiff-Estrada). Plaintiff-Tremari saw there was no future for him at Liberty and felt that he had no choice but to resign. His resignation came due to the futility of opposing the unlawful English-only practice at Liberty.

19

**RESPONSE**: Defendants admit that Plaintiff Tremari voluntarily resigned his employment.  Defendants deny the remaining allegations in Paragraph 43 of the Complaint.

44.     As the constructive discharge is an adverse employment action and came as a direct result of Liberty's failure to investigate the complaints and take action, Plaintiff-Tremari can establish both a constructive discharge claim and a retaliation claim.

**RESPONSE**:  Defendants deny the allegations in Paragraph 44 of the Complaint.

*TOMAS VELASOUEZ-ESTRADA [ALLEGED] CAUSES OF ACTION*

### VI.  COUNT 1— [ALLEGED] TITLE VII RACE DISCRIMINATION

45.     Plaintiffs incorporate by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

**RESPONSE**: Defendants incorporate by reference all of the foregoing responses in response to each of foregoing allegations as if fully set forth herein.

46.     Defendant intentionally engaged in unlawful employment practices involving Plaintiff-Estrada because of his race (i.e., Hispanic).

**RESPONSE**:  Defendants deny the allegations in Paragraph 46 of the Complaint.

47.     Defendant discriminated against Plaintiff-Estrada in connection with the compensation, terms, conditions, and privileges of employment; or limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive Plaintiff of any employment opportunity or adversely affect his status because of Plaintiffs race (i.e., Hispanic), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).

**RESPONSE**:  Defendants deny the allegations in Paragraph 47 of the Complaint.

### VII.  COUNT 2 — [ALLEGED] TCHRA RACE DISCRIMINATION

48.      Plaintiffs incorporate by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

**RESPONSE**:  Defendants incorporate by reference all of the foregoing responses to each of the foregoing allegations above as if fully set forth herein.

49.      Defendant intentionally engaged in unlawful employment practices involving Plaintiff-Estrada because of his race (i.e., Hispanic).

**RESPONSE**:  Defendants deny the allegations of Paragraph 49 of the Complaint.

50.      Defendant discriminated against Plaintiff-Estrada in connection with the compensation, terms, conditions, and privileges of employment; or limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive Plaintiff of any employment opportunity or adversely affect his status because of Plaintiffs race (i.e., Hispanic), in violation of Texas Labor Code § 21.051 et seq.

**RESPONSE**:  Defendants deny the allegations of Paragraph 50 of the Complaint.

## VIII.  COUNT 3 — [ALLEGED] TITLE VII NATIONAL ORIGIN DISCRIMINATION

51.      Plaintiffs incorporate by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

**RESPONSE**:  Defendants incorporate by reference all of the foregoing responses to each of the foregoing allegations above as if fully set forth herein.

52.      Defendant intentionally engaged in unlawful employment practices involving Plaintiff-Estrada because of his national origin (i.e., Mexico).

**RESPONSE**:  Defendants deny the allegations of Paragraph 52 of the Complaint.

53.      Defendant discriminated against Plaintiff-Estrada in connection with the compensation, terms, conditions, and privileges of employment; or limited, segregated, or

classified Plaintiff in a manner that would deprive or tend to deprive Plaintiff of any employment opportunity or adversely affect his status because of Plaintiffs national origin (i.e., Mexico), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).

**RESPONSE**: Defendants deny the allegations of Paragraph 53 of the Complaint.

## IX.  COUNT 4 — [ALLEGED] TCHRA NATIONAL ORIGIN DISCRIMINATION

54.   Plaintiffs incorporate by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

**RESPONSE**: Defendants incorporate by reference all of the foregoing responses to each of the foregoing allegations above as if fully set forth herein.

55.   Defendant intentionally engaged in unlawful employment practices involving Plaintiff-Estrada because of his national origin (i.e., Mexico).

**RESPONSE**: Defendants deny the allegations of Paragraph 55 of the Complaint.

56.   Defendant discriminated against Plaintiff-Estrada in connection with the compensation, terms, conditions, and privileges of employment; or limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive Plaintiff of any employment opportunity or adversely affect his status because of Plaintiffs national origin (i.e., Mexico), in violation of Texas Labor Code § 21.051.

**RESPONSE**: Defendants deny the allegations of Paragraph 56 of the Complaint.

## X.  COUNT 5 — [ALLEGED] ADEA AGE DISCRIMINATION

57.   Plaintiffs incorporate by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

**RESPONSE**: Defendants incorporate by reference all of the foregoing responses to each of the foregoing allegations above as if fully set forth herein.

58.     Defendant intentionally engaged in unlawful employment practices involving Plaintiff-Estrada because of his age, sixty-three (63) years old.

**RESPONSE**:  Defendants deny the allegations in Paragraph 58 of the Complaint.

59.     Defendant discriminated against Plaintiff-Estrada in connection with the compensation, terms, conditions, and privileges of employment; or limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive Plaintiff of any employment opportunity or adversely affect his status because of Plaintiffs age, sixty-three (63) years old, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.

**RESPONSE**:  Defendants deny the allegations of Paragraph 59 of the Complaint.

## XI.  COUNT 6 — [ALLEGED] TCHRA AGE DISCRIMINATION

60.     Plaintiffs incorporate by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

**RESPONSE**:  Defendants incorporate by reference all of the foregoing responses to each of the foregoing allegations above as if fully set forth herein.

61.     Defendant intentionally engaged in unlawful employment practices involving Plaintiff-Estrada because of his age, sixty-three (63) years old.

**RESPONSE**:  Defendants deny the allegations of Paragraph 61 of the Complaint.

62.     Defendant discriminated against Plaintiff-Estrada in connection with the compensation, terms, conditions, and privileges of employment; or limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive Plaintiff of any employment opportunity or adversely affect his status because of Plaintiffs' age, sixty-three (63) years old, in violation of Texas Labor Code § 21.051.

**RESPONSE**:  Defendants deny the allegations of Paragraph 62 of the Complaint.

## XII.  COUNT 7 — [ALLEGED] SECTION 1981 RACIAL DISCRIMINATION

63.    Plaintiffs hereby incorporate by reference all of the allegations contained in the above-identified paragraphs as though fully set forth herein.

**RESPONSE**:  Defendants incorporate by reference all of the foregoing responses to each of the foregoing allegations above as if fully set forth herein.

64.    Pursuant to 42 U.S.C. §1981 Plaintiff-Estrada pleads a cause of action against the Defendant for racial discrimination.

**RESPONSE**:  Defendants deny the allegations of Paragraph 64 of the Complaint.

65.    Plaintiff-Estrada was treated differently than other employees that are not of Hispanic descent. Defendant engaged in discrimination against Plaintiff-Estrada, Hispanic male, by a constructive discharge, harassment and making a hostile work environment based upon Plaintiffs' race and national origin—depriving Plaintiff-Estrada of equal employment opportunities and otherwise adversely affecting his status as an employee. As a result of Defendant's discrimination, Plaintiff-Estrada suffered damages (in an amount that is within the jurisdictional limits of this Court).

**RESPONSE**:  Defendants deny the allegations of Paragraph 65 of the Complaint.

*THOMAS TREMARI'S [ALLEGED] CAUSES OF ACTION*

### XII. [*sic*]  COUNT 8 —  [ALLEGED]TITLE VII RETALIATION

66.    Plaintiffs incorporate by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

**RESPONSE**:  Defendants incorporate by reference all of the foregoing responses to each of the foregoing allegations above as if fully set forth herein.

24

67.     Defendant intentionally retaliated against Plaintiff-Tremari because of the complaints of race and national origin discrimination made to Defendant prior to Plaintiff-Tremari's constructive termination.

**RESPONSE**: Defendants deny the allegations of Paragraph 67 of the Complaint.

## XIV.  COUNT 9 — [ALLEGED] TCHRA RETALIATION

68.     Plaintiffs incorporate by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

**RESPONSE:** Defendants incorporate by reference all of the foregoing responses to each of the foregoing allegations above as if fully set forth herein.

69.     Defendant intentionally retaliated against Plaintiff-Tremari because of the complaints of discrimination made to Defendant in violation of the Texas Labor Code §21.055.

**RESPONSE:** Defendants deny the allegations of Paragraph 69 of the Complaint.

## XV.  COUNT 10 — [ALLEGED] ADEA RETALIATION

70.     Plaintiffs incorporate by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

**RESPONSE**: Defendants incorporate by reference all of the foregoing responses to each of the foregoing allegations above as if fully set forth herein.

71.     Defendant intentionally retaliated against Plaintiff-Tremari because of complaints made to Defendant of age discrimination in violation of the ADEA.

**RESPONSE**: Defendants deny the allegations of Paragraph 71 of the Complaint.

## XVI.  COUNT 11 – [ALLEGED] SECTION 1981 RETALIATION

72.     Plaintiffs hereby incorporate by reference all of the allegations contained in the above-identified paragraphs as though fully set forth herein.

**RESPONSE**:  Defendants incorporate by reference all of the foregoing responses to each of the foregoing allegations above as if fully set forth herein.

73.    Pursuant to 42 U.S.C. § 1981, Plaintiff-Tremari pleads a cause of action against Defendant for retaliation. Defendant intentionally retaliated against Plaintiff-Tremari because Plaintiff-Tremari complained to Defendant about the race discrimination that Plaintiff-Estrada experienced while employed by Defendant.

**RESPONSE**:  Defendants deny the allegations of Paragraph 73 of the Complaint.

74.    After Plaintiff-Tremari's protected complaints of the racially discriminatory actions by Defendant, Plaintiff-Tremari was subjected to a hostile work environment and subsequent constructive termination, which was a violation of 42 U.S.C. §1981. As a result of Defendant's retaliation, Plaintiff-Tremari suffered damages (in an amount that is within the jurisdictional limits of this Court).

**RESPONSE**:  Defendants deny the allegations of Paragraph 74 of the Complaint.

## XVII. JURY DEMAND

**RESPONSE**:  Defendants admit that Plaintiffs have requested a jury trial.

## XVII. PLAINTIFF'S PRAYER

**RESPONSE**:  Defendants deny that Plaintiffs are entitled to any of the relief sought in the Prayer paragraph of their Complaint, including subparts (a) – (i).

## DEFENSES AND AFFIRMATIVE DEFENSES

Defendants assert the following affirmative and other defenses without assuming any burdens of production, persuasion, or proof that are not legally assigned to Defendants and are Plaintiffs' burden to prove.  Defendants expressly reserve their right to assert additional defenses.

1. Plaintiffs' claims are not actionable because the challenged employment practices are justified by legitimate, non-discriminatory, non-retaliatory, and non-pretextual business reasons unrelated to Plaintiffs' race, national origin, age, and/or alleged protected activity, and were made in good faith.

2. Defendants would have taken the same employment actions with respect to Plaintiffs, even in the absence of the discriminatory and/or retaliatory motives alleged by Plaintiffs.

3. Defendants have in place a clear and well disseminated policy against discrimination and harassment and a reasonable and available procedure for handling complaints of violations thereof, which provides for prompt and effective responsive action.  To the extent Plaintiffs failed to take advantage of the preventive or corrective opportunities provided by Defendants, or to otherwise avoid harm, Plaintiffs' claims of alleged discrimination and/or harassment are barred.

4. To the extent applicable, and pending discovery, Plaintiffs have failed to mitigate any damages they may claim to have suffered as a result of any alleged actions. Alternatively, any damages claimed to have been suffered by Plaintiffs should be reduced by whatever income or economic benefits they have earned or received since their resignation of employment with Defendants.

5. To the extent applicable, and pending discovery, Plaintiffs' alleged damages are limited or barred by the after-acquired evidence doctrine.

6. Defendants did not commit any act with malice or reckless indifference to Plaintiffs' legally protected rights, nor did Defendants approve, authorize, ratify, or have actual knowledge of any such acts.

7.  Plaintiffs' damage claims are barred, in whole or in part, to the extent Plaintiffs seek to recover damages in excess of the type and amounts allowed or provided by law.

8.  Without conceding that Plaintiffs have suffered any damages because of any alleged wrongdoing by Defendants, Defendants plead the due process limitations on punitive/exemplary damages outlined by the Supreme Court in its opinion in *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003).

9.  Defendants cannot be vicariously liable for punitive damages in light of their good faith efforts to comply with the anti-discrimination statutes at issue in this case. *See Kolstad v. American Dental Ass'n,* 527 U.S. 526 (1999).

WHEREFORE, PREMISES CONSIDERED, Defendants Liberty Oilfield Services, LLC, and Liberty Oilfield Services Inc. respectfully pray that Plaintiffs take nothing by way of this lawsuit, that they be awarded their costs, and for such other and further relief, at law or in equity, to which they may be entitled.

Respectfully submitted,

/s/ *Tiffany Cox Stacy*
Tiffany Cox Stacy
State Bar No. 24050734
tiffany.cox@ogletree.com
Elizabeth O. Perez
State Bar No. 24085982
Elizabeth.perez@ogletree.com
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
2700 Weston Centre
112 East Pecan Street
San Antonio, Texas 78205
210.354.1300
210.277.2702 (Fax)

ATTORNEYS FOR DEFENDANTS
LIBERTY OILFIELD SERVICES, LLC AND
LIBERTY OILFIELD SERVICES INC.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of August, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Alfonso Kennard, Jr.
Kennard Law P.C.
2603 Augusta Drive, Suite 1450
Houston, Texas  77057
Email: alfonso.kennard@kennardlaw.com

 */s/ Tiffany Cox Stacy*
Tiffany Cox Stacy / Elizabeth O. Perez

39677445.1